UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID HAMILTON (#108298) | CIVIL ACTION NO. |
| VERSUS | 21-199-JWD-SDJ |
| JOHN ORR, ET AL. | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 22, 2023.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID HAMILTON (#108298)** | **CIVIL ACTION NO.** |
| **VERSUS** | **21-199-JWD-SDJ** |
| **JOHN ORR, ET AL.** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants John Orr, Trent Barton, Luke Rheams, and Omar Walker.[1] The Motion is opposed.[2] For the following reasons, it is recommended that the Motion be granted, that all claims against Orr, Barton, Rheams, and Walker be dismissed with prejudice, and that the claims against Kayla Wolf be dismissed with prejudice *sua sponte*.

### I. Background

David Hamilton instituted this action on or about April 8, 2021, against John Orr, Trent Barton, Luke Rheams, Omar Walker, and Kayla Wolf, alleging various violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.[3] Hamilton seeks injunctive and monetary relief.[4]

### II. Law & Analysis

#### a. Standard of Review

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, so that the moving party is entitled to judgment as a matter of law.[5] A party moving for summary judgment must explain the basis for the motion and identify those portions of the

---

[1] R. Doc. 50.
[2] R. Doc. 52.
[3] R. Doc. 1.
[4] R. Doc. 1, pp. 17-18.
[5] Fed. Rule Civ. P. 56. *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[6] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that he can satisfy a reasonable jury that he is entitled to a verdict in his favor.[7] Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[8] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[9] However, the court must also determine whether the non-moving party's allegations are *plausible*. In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision] is a pure question of law."[10]

### b. The Undisputed Facts Demonstrate that No Excessive Force Occurred

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[11] Although "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury,"[12] the Eighth Amendment's prohibition against cruel and unusual punishment, excludes *de minimis* uses of physical force, provided that

---

[6] *Celotex Corp.*, 477 U.S. at 323.
[7] *Anderson*, 477 U.S. at 248.
[8] *Celotex Corp.*, 477 U.S. at 323.
[9] *International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1263 (5th Cir. 1991).
[10] *Scott v. Harris*, 550 U.S. 372, at n. 8 (2007) (emphasis in original).
[11] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[12] *Wilkins*, 559 U.S. at 38.

2

such force is not "repugnant to the conscience of mankind."[13] Factors to be considered in determining whether an alleged use of force is excessive include the extent of injury sustained, if any; the need for the application of force; the relationship between the need for force and the amount of force utilized; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[14]

Hamilton's own deposition testimony reveals the following undisputed facts. On September 18, 2020, an Officer Miller was passing out canteen orders.[15] She arrived at Hamilton's cell, requested his identification, and provided his canteen order, but she did not ask for Hamilton's cellmate's identification prior to providing his canteen order.[16] This prompted Hamilton to inquire as to why she requested his identification but not his cellmate's identification, and an argument ensued.[17] Hamilton testified in his deposition, in pertinent part, as follows:

> She cursed me and I cursed her. At that time while we was cursing each other out and doing a verbal – doing a verbal assault on each other, at that time all the defendants came through the back door. And when they came through the back door, we didn't let up. I didn't let up. She didn't let up. So when they came by my cell, Rheams, the one pulled her away from the bars and told Defendant Orr to, "Burn him." And without warning – I didn't know – he hit me dead in the face with a chemical agent in my face and in my chest, and I stood right there and asked to shower.[18]

Regarding the first *Hudson* factor, extent of injury sustained, Hamilton testified that he suffered from burning and skin peeling for approximately three days.[19] Hamilton did not suffer any long-

---

[13] *Hudson*, 503 U.S. at 10.
[14] *Id.* at 7.
[15] R. Doc. 50-4, p. 12.
[16] R. Doc. 50-4, p. 12.
[17] R. Doc. 50-4, p. 12.
[18] R. Doc 50-4, pp. 12-13.
[19] R. Doc. 50-4, pp. 23-24.

3

term effects from the chemical agent.[20] Thus, the injury sustained was minimal, and this factor weighs in favor of Orr.[21]

Regarding the need for the use of force, it is well accepted that the use of chemical agents by prison guards to quell a disturbance and restore prison order is not an unreasonable use of force and does not constitute cruel and unusual punishment, even if the inmate is locked in his prison cell or is in handcuffs.[22] Hamilton testified that he was cursing out another officer and "didn't let up," even when he saw Orr and other officers coming to his cell. Based upon Hamilton's own testimony, he was causing a disturbance and did not stop, apparently, until he was sprayed with chemical agent, indicating that there was a need for the use of force.[23] Accordingly, this factor also weighs in favor of Orr.

The amount of force utilized was also not out of proportion to the need for the use of force. Based upon the unusual occurrence report and the chemical agent logbook, 44 grams of chemical agent was disbursed, and based upon Hamilton's testimony, chemical agent was the only force used.[24] None of the facts adduced suggest that the amount of force used was out of proportion to the need for the use of force, and other courts have found the use of this amount of chemical agent to not be constitutionally relevant.[25] Thus, this factor also weighs in favor of Orr.

With respect to the threat reasonably perceived, though Hamilton's actions did not pose a physical threat, *per se*, courts have recognized that disobeying orders poses a threat to the order

---

[20] R. Doc. 50-4, pp. 24-25.
[21] *See Dora v. Rowe*, No. 20-270, 2021 WL 8202508, at *3 (N.D. Tex. Dec. 10, 2021) ("temporary effects of pepper spray—burning eyes and skin, irritation to nose and throat, etc.—constitute *de minimis* injuries.").
[22] *Miles v. Wilkinson*, No. 06-1079, 2007 WL 5023592, at *3 (W.D. La. Nov. 26, 2007).
[23] R. Doc. 50-4, p. 14.
[24] R. Docs. 50-8, pp. 2-3; 15-4, p. 3.
[25] *See Robinson v. South Carolina Dept. of Corrections*, No. 10-2593, 2012 WL 851042, at *7 (D.S.C. March 13, 2012) (31 grams of chemical agent not unconstitutionally excessive); *Scott v. Crosby*, 19-4746, 2021 WL 3472800, at *5 (N.D.Fl. July 28, 2021) (69.5 gram use of pepper spray shows an absence of sadistic or malicious intent and is not excessive).

and security of the prison as an institution;[26] likewise, it follows that openly and loudly violating prison rules by continuing a heated confrontation with an officer poses a threat to institutional security. Though Hamilton was confined to his cell, he was, admittedly, cursing at another officer and, by his own testimony, was refusing to back down.[27] Such a disturbance poses a threat to institutional security,[28] and the use of force to stop the disturbance is acceptable. Thus, this factor also weighs in favor of Orr.

With respect to the final factor—efforts made to temper the severity of a forceful response—it is unclear whether Hamilton was given any orders prior to the use of chemical agents. However, officers are not *per se* required to give an order prior to using force to stop a disturbance,[29] and even if no effort was made to temper the severity of the response, this one factor is not dispositive.[30] Weighing the above factors and considering in particular the unrelenting disturbance being caused by Hamilton and the minimal injury sustained, the undisputed facts fail to establish that Orr's use of force, which consisted of only dispensing a small amount of chemical agent, was objectively unreasonable. Thus, it is recommended that Hamilton's claim of excessive force against Orr be dismissed with prejudice, as he has failed to demonstrate the existence of a constitutional violation.

---

[26] *Minix v. Blevins*, No. 06-306, 2007 WL 1217883, at *25 (E.D. Tex. April 23, 2007).

[27] The fact that Hamilton was confined in his cell is of no moment, as the use of chemical agent on a recalcitrant inmate, though confined in his cell, is not plainly *per se* unconstitutional. *See Harris v. Adcock*, No. 17-76, 2018 WL 5306650, at *3 (E.D. Tex. Aug. 21, 2018) (collecting cases); *Dillon v. Little*, No. 17-577, 2018 WL 2209211, at *5 (S.D. Tex. May 14, 2018).

[28] *See Rios v. McBain*, No. 504CV84, 2005 WL 1026192, at *7 (E.D. Tex. April 28, 2005) ("open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell.").

[29] *See Whitley*, 475 U.S. at 324-325 (shooting a prisoner in the leg without a prior verbal warning while quelling a prison riot did not constitute excessive force under the circumstances).

[30] *See Martin v. Seal*, 510 Fed.Appx. 309, 313 (5th Cir. 2013) ("none of these aforementioned factors is alone dispositive.").

### c. Failure to Intervene

Under the Eighth Amendment to the United States Constitution, a defendant security officer may be found responsible for a failure to intervene and take reasonable measures to protect an inmate from another officer's use of excessive force under a theory of bystander liability. An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.[31] Thus, a prerequisite for bystander liability is that the fellow officer's use of force must have actually been excessive and in violation of the constitution.[32] Having found that Orr did not use excessive force, Hamilton's claims for failure to intervene also fail and are subject to dismissal.

### d. Hamilton's Claims Regarding a Delayed Shower Fail as a Matter of Law

The delay between when Hamilton was sprayed and when he was allowed to shower does not state a claim of constitutional dimension. The facts demonstrate that there was an approximate nine-hour delay between when Hamilton was sprayed with chemical agent and when he was allowed to shower.[33] Courts have previously held that refusing to allow an inmate to shower after exposure to chemical spray does not rise to the level of deliberate indifference.[34] Accordingly, this claim fails as a matter of law.

---

[31] *See Whitley v. Hale*, 726 F.3d 631, 646 (5th Cir. 2013) (citing *Hale v. Townley*, 45 F.3d 914, 916 (5th Cir. 1995)).
[32] *Taylor v. Lollis*, No. 19-200, 2021 WL 5278729, at n. 50 (M.D. La. July 26, 2021) ("of logical necessity, the existence of a constitutional violation is an absolute prerequisite to a failure to intervene claim.").
[33] R. Doc. 50-4, p. 15.
[34] *See Pea v. Cain*, No. 12-779, 2014 WL 268696, *7, n. 7 (M.D. La., Jan. 23, 2014) ("a failure to allow an inmate to shower after an application of irritant spray is not the type of wrongdoing that rises to the level of deliberate indifference."), (citing *Roach v. Caddo Parish Sheriff's Dept.*, No. 07-364, 2010 WL 420068 (W.D. La., Jan. 29, 2010)); *Dufrene v. Tuner*, No. 05-2066, 2006 WL 2620091 (W.D. La., Aug. 14, 2006).

### e. Wolf Should be Dismissed *Sua Sponte*

The Court possesses the inherent authority to *sua sponte* dismiss a party or expand upon the grounds for dismissal urged by movants as long as the adverse parties receive notice and a chance to respond.[35] This Report and Recommendation provides adequate notice to Hamilton.[36] Based upon the uncontroverted evidence, Wolf was not deliberately indifferent to Hamilton's serious medical needs. To state a claim of deliberate medical indifference, an inmate plaintiff must demonstrate that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[37] "[S]ubjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[38] The *Farmer* case lays out both an objective prong and a subjective prong for determining deliberate indifference.[39] The objective prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[40] *Farmer's* "subjective" prong, requires a showing that prison officials acted with a "sufficiently culpable state of mind."[41] The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[42] That the plaintiff has not received the treatment he believes he should is not

---

[35] *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322 (5th Cir. 1995) (unpubl.) (district court *sua sponte* dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).
[36] *McCoy v. Wade*, No. 06-2292, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).
[37] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).
[38] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[39] *Id*. at 837.
[40] *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[41] *Id.*
[42] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*.

enough absent exceptional circumstances.[43] Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action.[44] Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[45]

Based upon Hamilton's deposition testimony, he did not have any serious medical need.[46] Hamilton had irritated skin that lasted approximately three days as a result of the use of chemical agents.[47] Other courts have held that various skin irritations ranging from burning to rashes, even those causing pain and itching, do not constitute a serious medical need.[48] Accordingly, the lack of a serious medical need renders Hamilton's deliberate indifference to a serious medical need claim meritless.[49]

---

[43] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).
[44] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).
[45] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).
[46] R. Doc. 50-4, pp. 24-25.
[47] R. Doc. 54, pp. 23-24.
[48] See *Tasby v. Cain*, 86 Fed. Appx. 745 (5th Cir. 2004) (the development of a rash as a result of being placed in restraints does not establish that the inmate suffered "serious harm"); *Riddick v. Modeny*, 250 Fed. Appx. 482 (3rd Cir. 2007) (failure to provide medications prescribed for eczema did not demonstrate deliberate indifference to a serious medical need); *Tsakonas v. Cicchi*, 308 Fed. Appx. 628, 632 (3rd Cir. 2009) (denial of treatment for "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles on his right hand" failed to allege a serious medical condition); *Sledge v. Kooi*, 564 F.3d 105 (2nd Cir. 2009) (eczema, back pain, stomach disorders, allergies, and asthma did not constitute a "serious medical need"); *Hunt v. Carver*, 2020 WL 9348170, *16 (S.D. W. Va. 2020) (medical need was not serious when inmate complained of dry red spots that were burning and increasing in size on knees, hands, legs, and elbows); *Gonzales-Reyna v. Ellis,* 2009 WL 2421482, * 3 (E.D. Va. 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation."); and *Samuels v. Jackson*, 1999 WL 92617, *1-3 (S.D. 1999) (prisoner's claim of intense itching from eczema did not constitute a "serious medical need").
[49] Further, though Hamilton alleges he was denied medical attention, the record is clear that Hamilton received medical attention on the day of the incident, as well as two and four days later (R. Doc. 29-1, pp. 19-20), and a mere delay in medical care is insufficient to state a claim for deliberate indifference if there is not a showing of both a culpable state of mind and a resulting substantial harm. *Mendoza*, 989 F.2d at 195. Hamilton has not alleged any facts to support either. Additionally, Hamilton's complaints regarding how he was treated and the lack of cream provided for his skin irritation amounts to a disagreement with treatment, which does not rise to the level of deliberate indifference. Accordingly, Hamilton's claims for deliberate indifference must fail as a matter of law.

## RECOMMENDATION

**IT IS RECOMMENDED** that the Motion for Summary Judgment filed by Defendants John Orr, Trent Barton, Luke Rheams, and Omar Walker be **GRANTED,** that Hamilton's claims against Orr, Barton, Rheams, and Walker be **DISMISSED WITH PREJUDICE**, and that Hamilton's claims against Kayla Wolf be **DISMISSED WITH PREJUDICE** on the Court's own motion, resulting in this action being dismissed in its entirety.

## ORDER

Considering the foregoing recommendation, **IT IS ORDERED** that the Motion for Appointment of Counsel[50] filed by Plaintiff David Hamilton is **DENIED** without prejudice to reurging should the recommendation not be adopted.[51]

Signed in Baton Rouge, Louisiana, on March 22, 2023.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[50] R. Doc. 39.
[51] The Report recommends granting summary judgment largely based upon Hamilton's own deposition testimony, so it does not appear that counsel would be helpful to Hamilton. Further, because the Court has recommended dismissal of Wolf, Hamilton does not need assistance in locating that Defendant.